# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| AUDREY BRANNON<br><br>Plaintiff,<br>v.<br><br>DENIS MCDONOUGH, SECRETARY DEPARTMENT OF VETERANS AFFAIRS,<br><br>Defendant. | Civil Action No.<br><br>120-cv-00182-JRH-BKE<br><br>Jury Trial Demand |

## AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND EQUITABLE RELIEF

Plaintiff files this Amended Complaint for Damages and Equitable Relief, and shows the Court as follows:

**I.     Preliminary Statement**

1. This action seeks actual damages, declaratory, injunctive and equitable relief, compensatory damages, costs and another relief deemed appropriate by this Court for the race discrimination, disability discrimination, reprisal and hostile work environment suffered by Plaintiff, Audrey Brannon ("Ms. Brannon") in her treatment by Defendant.

## II.     Jurisdiction

2. This action is brought for disability discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act. The jurisdiction of this court is invoked to secure protection and redress deprivation of rights secured by federal law which prohibits discrimination against employees because of their protected class and protected activities.

3. The jurisdiction of this Court is invoked pursuant to its original jurisdiction over cases and controversies arising under federal law, pursuant to 28 U.S.C. § 1331, and all prerequisites to bringing this suit have been met. This suit is properly before the court.

4. Plaintiff made timely informal Equal Employment Opportunity ("EEO") contact regarding counseling the claims at issue in this action on or about April 2017, and Plaintiff subsequently timely filed a formal complaint of discrimination on or about July 5, 2017.

5. Plaintiff received a final agency decision and files this Complainat within 90 days of receiving same. This Complaint is timely.

### III. Venue

6. This action properly lies in the United States District Court for the Southern District of Georgia, pursuant to 29 U.S.C. § 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

### IV. Parties

7. Ms. Brannon was an employee with the Department of Veterans Affairs at all relevant times.

8. Ms. Brannon is a resident of Richmond County, GA and is a citizen of the United States.

9. The Defendant is a federal government agency and has offices throughout the United States, including in Augusta, GA. Defendant is an employer, engages in an industry affecting commerce, and, upon information and belief, employs over 500 regular employees.

### V. Facts

10. At all relevant times, Ms. Brannon, African American, was a Social Worker, GS-11, Registered Dietician, at the Charlie

       Norwood VA Medical Center in Augusta, GA.

11. Plaintiff engaged in EEO activity to include: activities regarding her 2017 200I-0509-2017102352 claims; activities regarding her 2018 200I-0509-2018101489 claims; protected oppositional activity as part of her OSC Complaint, MA-17-1627 filed in 2017 and her Whistleblower / Retaliation Complaint filed on January 2017. Plaintiff also engaged in protected oppositional activity when she refused to falsely testify as Loflin requested.

12. Plaintiff has diabetes and at all relevant times was a qualified individual with a disability who could perform the essential functions of her job with our without accommodations.

13. At all times relevant to the complaint Sheri Loflin, ("Ms. Loflin"), was Ms. Brannon's first- level supervisor.

14. Plaintiff was subjected to unwelcome conduct.

15. Denying Plaintiff the opportunity for weekend rotational shifts in and around July 2017 was unwelcome to Plaintiff and would have been unwelcome to a reasonable person in her position.

16. Denying participation on an EEO committee in or around April 2017 was unwelcome to Plaintiff and would have been unwelcome to a reasonable person in her position.

17. The proposed removal in November 2016 was unwelcome to Plaintiff and would have been unwelcome to a reasonable person in her position.

18. Placement on a PIP in or around December 2015 was unwelcome to Plaintiff and would have been unwelcome to a reasonable person in her position.

19. Denial of Plaintiff's ability to participate in weekend overtime coverage in July 2017 was unwelcome to Plaintiff and would have been unwelcome to a reasonable person in her position.

20. This is especially true in context and in combination of the other harassment.

21. Plaintiff was subjected to conduct that would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity.

22. Denying the opportunity for weekend rotational shifts was something that would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity.

23. Denying participation on an EEO committee was something that would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity.

24. The proposed removal was something that would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity.

25. Placement on a PIP was something that would dissuade a reasonable employee from engaging in protected activity and Plaintiff believed would dissuade a reasonable employee from engaging in protected activity.

26. Denial of overtime was something that would dissuade a reasonable employee from engaging in protected activity and

>      Plaintiff believed would dissuade a reasonable employee from engaging in protected activity.

27. This is especially true in context and in combination.

28. Denial of overtime opporunities, notice of a proposed removal, placement on a performance improvement plan, and denial of participation on an EEO committee was in combination severe and/or pervasive harassment and Plaintiff believed these things in combination were severe and/or pervasive harassment.

29. The conduct at issue was based on race and or tainted by race.

30. Plaintiff refers to her testimony in the Report of Investigation.

31. Plaintiff is black, her supervisor is white.

32. Another Black registered dietician under Sheri Loflin's supervision was wrongly fired by Loflin.

33. Loflin asked Plaintiff, a black RD to testify faselely against this black registered dietican.

34. Upon information and belief, Loflin did this because of Plaintiff's race and to cover Loflin's racial discrimination.

35. That situation shows racial discrimination in this case.

36. Loflin came to Plaintiff's office, which is in a separate building from S. Loflin.

37. Plaintiff's office was also next door to Josephine Gardner Rogers. Josephine, a black RD under Loflin's supervision, was scheduled for an employment Hearing/Court on the third floor at the Augusta VA Hospital, where they all worked.

38. Loflin closed Plaintiff's office door and asked Plaintiff to please testify against Josephine that there were work deficiencies.

39. Loflin led Plaintiff in what to say against Ms. Rogers, in preparation for the hearing.

40. Plaintiff explained to Loflin that she was not aware of any inadequacies of Josephine's work, therefore she could not lie for her against Josephine, as Loflin was leading Plaintiff to do.

41. However, Plaintiff agreed to share a minor incident that occurred, where Plaintiff placed a document under Rogers door and Rogers opened her office door and shouted to get it and take it with her.

42. Plaintiff believes this was done because of Plaintiff's race.

43. Plaintiff's refusual to lie was oppositional protected activity.

44. Plaintiff was effectively asked to use her status as an African American to help cover up Loflin's wrongful removal of an African American female.

45. Plaintiff refused to be led.

46. Loflin tried to remove two of three African Americans who she has supervised in the past relevant time frame, but, upon information and belief, treated similarly situated white supervisees more favorably.

47. Plaintiff wanted very much and requested to participate in the April 2017 Annual Black History Special Emphasis Program held at their VA.

48. The Black History program would have taken approx. 1-2 hours.

49. Plaintiff, a black female, had elder family members (to include her living 86 yr. old dad) who suffered through prior years due to race and were denied opportunities afforded to others.

50. She thus wanted to participate. She, also having graduated from a HBCU-predominantly Black College (Fort Valley State 1980) would have been honored to participate.

51. However, she was denied just a couple of hours, by both Loflin and new Dietary Chief (Lin Shu), from celebrating in this VA encouraged and sponsored program, at the workplace.

52. There was no legitimate reason for this denial.

53. Showing mendacity and that the action was based on Plaintiff's race, Loflin now denies that Plaintiff was denied participation in the Black Employment EEO committee.

54. Also, per ongoing denials to include her request per the Inspecting our VA Substance abuse inventory, especially when VA was requesting, Plaintiff no longer asked to participate in anything any longer.

55. Not only did management deny this opportunity because of Plaintiff's race, management now falsely claims they never denied participation, showing mendacity, and a guilty mind.

56. The wrongdoers were aware of the protected activity at the time of the denial.

57. The wrongdoers were targets of the protected activity

58. The timing shows evidence of causation.

59. The conduct was based on disability.

60. Loflin was aware of Plaintiff's disability.

61. The denial of the weekend rotational shift was pretextual.

62. The denial was of the opportunity for weekend rotational shifts based on falsified and untrue performance reasons.

63. The November meeting was pretextual.

64. On November 4, 2015, Plaintiff was informed that she did a very good job, however the paper work she was provided contradicted that sentiment. Fortunately, Plaintiff read near the bottom of the documents where it said "demoted" or "fired," and refused to sign.

65. Plaintiff joined the union to protect herself from this discrimination.

66. Loflin and Vaught later replaced the document, warranting an adverse inference.

67. Upon information and belief, Loflin has taken adverse employment steps against black employees more than white employees because of race.

68. The PIP issued by Loflin to Plaintiff in 2015 was contrary to the VA's policies.

69. There was no prior counseling before the review.

70. There were no attempts to require a class, course, or official training.

71. There was no one-on-one counseling prior to the PIP.

72. There was no other warning or indication of any type of concern.

73. The illegal actions were called to the attention of Loflin and Vaught.

74. Moore overheard Vaught tell Loflin, "you've got to come up with something better than this if you want to get rid of her."

75. Vaught made these comments.

76. Shortly thereafter, Plaintiff was placed on a PIP.

77. The PIP was pretextual because in fact there were no performance issues or the performance issues as stated in the PIP.

78. In 2014, Plaintiff received an outstanding performance award with a cash bonus.

79. In April 2015, Plaintiff received a fully successful mid-year performance review.

80. Upon information and belief, Plaintiff's performance in the PIP was evaluated differently than similarly situated non-white

employees, non-disabled employees, and employees who had not engaged in protected activity.

81. The Agency violated its policies when it closed out Plaintiff's rating cycle as unacceptable and when it did not provide her prior counseling, notice of performance issues, or a PIP.

82. Then the Agency "unclosed" the rating and changed the rating period to allow for a PIP to occur.

83. The proposed removal was pretextual.

84. The PIP upon which it was based is pretextual.

85. The proposed removal was excessive.

86. Upon information and belief, Plaintiff's performance in the proposed removal was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in protected activity.

87. Loflin is minimizing her role, and used the proposal to "get rid" of Plaintiff.

88. Loflin cherry picked unsupportable data to justify career termination and create a false narrative.

89. The reason for the proposed removal was based on a falsity.

90. Loflin unfairly viewed Plaintiff's performance, and acted on such unfairness.

91. The removal was not effectuated.

92. Ms. Walters stated, "Plaintiff was placed on a performance improvement plan (PIP) after she was rated unsuccessful on her yearly appraisal. Plaintiff then failed to maintain the standards of the PIP. As a result, she was issued a letter proposing her removal from Federal Service.

93. Ms. Walter's statements is false: Plaintiff never failed to maintain the standards of the PIP.

94. All of this conduct was in combination severe or pervasive harassent.

95. There is liability for harassment.

96. The conduct was committed by Plaintiff's supervisor so the Agency was aware.

97. The Agency never investigated or stopped the harassment despite knowing about it.

98. Defendant's actions damaged Plaintiff and her reputation.

## VI. Count I: Violation of the Rehabilitation Act – Harassment

99. Ms. Brannon incorporates by reference paragraphs 1-98 of her complaint as if fully set forth herein.

100. The Rehabilitation Act and the Americans with Disabilities Act expressly prohibit discrimination in employment on the basis of disability.

101. The above harassment was in context severe and pervasive.

102. The above harassment was based on disability and/or tainted by disability.

103. The above harassment was unwelcome to Plaintiff.

104. There is a basis for liability.

105. The harassment caused Plaintiff damages for which Defendant is liable.

## VII. Count II: Violation of the Rehabilitation Act – Retaliatory Harassment

106. Ms. Brannon incorporates by reference paragraphs 1-98 of her complaint as if fully set forth herein.

107. The Rehabilitation Act and the Americans with Disabilities Act expressly prohibit discrimination in employment on the basis of reprisal.

108. The above harassment would have led a reasonable employee not to engage in protected activity. It was retaliatory harassment.

109. The above harassment was based on protected activity and/or tainted by protected activity

110. The above harassment was unwelcome to Plaintiff.

111. There is a basis for liability.

112. The harassment caused Plaintiff damages for which Defendant is liable.

## VIII. Count III: Violation of Title VII – Race Harassment

113. Ms. Brannon incorporates by reference paragraphs 1-98 of her complaint as if fully set forth herein.

114. Title VII prohibits discrimination in employment on the basis of race.

115. The above harassment was in context severe and pervasive.

116. The above harassment was based on race and/or tainted by race.

117. The above harassment was unwelcome to Plaintiff.

118. There is a basis for liability.

119. The harassment caused Plaintiff damages for which Defendant is liable.

## IX. Count IV: Violation of the Title VII Act – Retaliatory Harassment

120. Ms. Brannon incorporates by reference paragraphs 1-98 of her complaint as if fully set forth herein.

121. Title VII expressly prohibits discrimination in employment on the basis of reprisal.

122. The above harassment would have led a reasonable employee not to engage in protected activity. It was retaliatory harassment.

123. The above harassment was based on protected activity and/or tainted by protected activity

124. The above harassment was unwelcome to Plaintiff.

125. There is a basis for liability.

126. The harassment caused Plaintiff damages for which Defendant is liable.

## X. Count V: Violation of Title VII – Disparate treatment

127. Ms. Brannon incorporates by reference paragraphs 1-98 of her complaint as if fully set forth herein.

128. The actions of Defendant caused adverse employment actions to include the denial of the opportunities with respect to the

      weekend overtime, and participation on the EEO committee.

129. The actions were based on race and/or tainted by race and/or based on protected activity and/or tainted by protected activity.

130. Plaintiff has suffered damages for which the Defendant is liable.

## XI. Count V: Violation of Rehabilitation Act – Disparate treatment

131. Ms. Brannon incorporates by reference paragraphs 1-98 of her complaint as if fully set forth herein.

132. The actions of Defendant caused adverse employment actions to include the denial of the opportunities with respect to the weekend overtime, and participation on the EEO committee.

133. The actions were based on disability and/or tainted by disability and/or based on protected activity and/or tainted by protected activity.

134. Plaintiff has suffered damages for which the Defendant is liable.

## XII. Prayer for Relief

Wherefore, Ms. Brannon prays that this Court:

    a.    declare the conduct engaged in by the Defendant to be in violation of her rights,

      b.      enjoin the Defendant from engaging in such conduct;

      c.      award Ms. Brannon actual damages;

      d.      award Ms. Brannon compensatory damages;

      e.      award Ms. Brannon costs and attorney's fees; and

      f.      grant such other relief as it may deem just and proper.

## XIII.   Jury Demand

Ms. Brannon requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted today,

**SOUTHWORTH, P.C.**

*/s/ Ianna Richardson*
_____
Ianna Richardson
Georgia Bar No. 655153
Southworth P.C.
1100 Peachtree Street NE, Suite 200
Atlanta, GA 30309
Phone: (404) 585-8095
Fax: (404) 393-4129
ianna@southworthpc.com