IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

AUDREY BRANNON,

    Plaintiff,

      v.

DENIS MCDONOUGH,

    Defendant.

```
*
*
*
*
*
*
*
*
*
```

CV 120-182

---

**O R D E R**

---

Before the Court is Defendant's motion to dismiss Plaintiff's amended complaint.   (Doc. 19.)   For the reasons that follow, Defendant's motion is **GRANTED.**


**I. BACKGROUND[1]**

Plaintiff is an African American woman formerly employed as a social worker, GS-11, and registered dietician at the Charlie Norwood Veterans Affairs Medical Center in Augusta, Georgia.  (Doc. 18, ¶¶ 7-10.)  Through this action, she sues her former employer, the Secretary of the Department of Veterans Affairs, for six alleged violations of federal law.  (Id. ¶¶ 99-134.)  The six counts are: (1) violation of the Rehabilitation Act of 1973, 29

---

[1] In deciding this motion to dismiss, the Court accepts all facts alleged in the amended complaint as true and construes all reasonable inferences in the light most favorable to Plaintiff.  See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

U.S.C. § 701 *et seq.* ("Rehabilitation Act") – harassment; (2) violation of the Rehabilitation Act – retaliatory harassment; (3) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") – race harassment; (4) violation of Title VII – retaliatory harassment; (5) violation of Title VII – disparate treatment; and (6) violation of the Rehabilitation Act – disparate treatment. (Id.) Plaintiff's claims are based on four actions taken by her employer which she alleges were motivated by a variety of reasons.

First, Plaintiff alleges she was placed on a performance improvement plan ("PIP") in or around December 2015, Defendant's issuance of which was "contrary to [her employer's] policies" and her regularly outstanding performance reviews. (Id. ¶¶ 18, 64, 68, 78, 79.) Plaintiff claims her placement on the PIP "was pretextual because in fact there were no performance issues." (Id. ¶ 77.) Plaintiff also claims her performance in the PIP "was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in protected activity." (Id. ¶ 80.)

Second, Plaintiff points to her proposed removal in November 2016. (Id. ¶ 17.) She claims this proposed removal "was excessive," that her "performance in the proposed removal was evaluated differently than similarly situated non-white employees, non-disabled employees, and employees who had not engaged in

protected activity," that her supervisor "cherry[-]picked unsupportable data to justify career termination and create a false narrative," and that "the proposed removal was based on a falsity." (Id. ¶¶ 85-89.)

Third, Plaintiff claims she was denied "participation on an [Equal Employment Opportunity ("EEO")] committee in or around April 2017." (Id. ¶ 16.) Plaintiff requested to participate in the "April 2017 Annual Black History Special Emphasis Program held at their VA," which would have taken approximately one or two hours. (Id. ¶¶ 47-48.) However, Plaintiff was denied this opportunity because of Plaintiff's race and disability. (Id. ¶¶ 51-52, 55, 59.)

Fourth, and finally, Plaintiff was denied the opportunity to work weekend rotational shifts. (Id. ¶ 15.) In her amended complaint, Plaintiff claims this occurred "in and around July 2017." (Id.) However, in the EEO complaint Plaintiff submitted with her original complaint, Plaintiff alleges she was not "allowed to work her required weekend rotation" beginning in December 2015. (Doc. 1-1, at 5.) Plaintiff claims "denial of the weekend rotational shift was pretextual" was "based on falsified and untrue performance reasons." (Doc. 18, at ¶¶ 61, 62.)

Plaintiff asserts she "made timely informal [EEO] contact regarding counseling [for] the claims at issue in this action on or about April 2017, and . . . filed a formal complaint of

discrimination on or about July 5, 2017."[2]   (Id. ¶ 4.)   Plaintiff
claims she "received a final agency decision and file[d] [her
complaint] within 90 days of receiving [the] same."   (Id. ¶ 5.)
Now, Defendant seeks to dismiss the amended complaint for failure
to timely exhaust administrative remedies and failure to state a
claim.   (Doc. 19.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the
Court tests the legal sufficiency of the complaint.   Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by
Davis v. Scherer, 468 U.S. 183 (1984).   Pursuant to Federal Rule
of Civil Procedure 8(a)(2), a complaint must contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief" to give the defendant fair notice of both the claim and
the supporting grounds.   Bell Atl. Corp. v. Twombly, 550 U.S. 544,
555 (2007).   Although "detailed factual allegations" are not
required, Rule 8 "demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to

---

[2] Defendant correctly notes that the counselor's report shows the exact date of
initial contact as March 20, 2017.   (Doc. 6-2, at 2.)

relief that is plausible on its face.'" [3] Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

---

[3] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

## III. DISCUSSION

**A. Time-Barred Claims**

Before filing suit under Title VII, a federal employee must exhaust her administrative remedies so the agency has "the information it needs to investigate and resolve the dispute between the employee and the employer." <u>Crawford v. Babbitt</u>, 186 F.3d 1322, 1326 (11th Cir. 1999) (internal citation and quotation omitted).   In Title VII and Rehabilitation Act cases like this one, a plaintiff "must initiate contact with [an EEO] Counselor within 45 days of the date of the" wrongful act.   29 C.F.R. § 1614.105(a)(1).   When a plaintiff does not initiate contact within the 45-day period, her claims are typically barred.   <u>Ramirez v. Sec'y, U.S. Dep't of Transp.</u>, 686 F.3d 1239, 1242 (11th Cir. 2012).

Here, Plaintiff admits she first contacted an EEO counselor on March 20, 2017, even though several of the allegedly actionable events occurred more than 45 days prior.[4]   These events include Defendant placing her on the PIP in December 2015 (Doc. 18, ¶ 18); proposing her removal in November 2016 (Doc. 18, ¶ 17); and finally, denying her the opportunity to work weekend rotational

---

[4] Again, Defendant notes that Plaintiff's amended complaint avers she contacted the EEO "on or about April 2017." (Doc. 19, at 7 n.3) (citing Doc. 18, ¶ 4.) The counselor's report shows the exact date of initial contact as March 20, 2017. (Doc. 6-2, at 2.)

shifts for overtime pay beginning in December 2015[5] (Doc. 1-1, at 5-6; Doc. 18, ¶¶ 15, 61).[6]   These events substantiate four of Plaintiff's six claims.   (Doc. 18, at 4-7, 15-18.)   Plaintiff, however, cites Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) to argue that her claims are not time-barred because they do not constitute discrete employment actions.   (Doc. 20, at 1-2.) Plaintiff notes that in a hostile work environment claim, "a claim can be timely brought at any time during the existence of [a hostile work] environment, provided at least one act of alleged harassment occurred within the charge-filing period" – here, 45 days.   (Id. at 1 (citing Morgan, 536 U.S. at 117.).)

Crucially, however, Plaintiff did not assert a claim for a hostile work environment in her amended complaint.   Rather, Plaintiff raised this claim for the first time in her response brief to the present motion.   (See Doc. 20, at 1-4.)   As Defendant notes, the amended complaint includes the phrase "hostile work environment" only once – in the introduction.   (Doc. 18, ¶ 1.) Plaintiff does not assert a hostile work environment claim in any of her six counts; instead, she alleges the above-described counts

---

[5] Plaintiff's amended complaint avers this denial occurred "in July 2017." (Doc. 18, ¶ 15.)  However, Plaintiff's exhibit specifically notes that Plaintiff is not "allowed to work her required weekend rotation" from "Dec 2015 to Present."  (Doc. 1-1, at 5-6.)

[6] On a motion to dismiss, the Court may view matters outside the pleadings when determining whether a plaintiff has exhausted her administrative remedies.  See Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008).  Indeed, the Court is permitted to make factual findings and resolve disputes as long as the Court does not reach the merits of a claim. See id. at 1376.

of harassment, retaliation, and discrimination. (Id. at 15-18.) And while Plaintiff "requests the ability to amend the complaint if necessary," (Doc. 20, at 3), Eleventh Circuit "precedent is clear: the proper method to request leave to amend is through filing a motion, and such motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 665 (11th Cir. 2015) (citation omitted). Here, Plaintiff "did not file a motion for leave to amend," but instead, "included the request for leave to amend in the memorandum [she] filed in opposition to the motion to dismiss. Furthermore, [she] failed to attach the amendment or set forth the substance of the proposed amendment." Id. at 665 (internal citation omitted). Because Plaintiff failed to bring a hostile work environment claim and instead brought claims for retaliation, harassment, and discrimination, she was required to file her claim within 45 days of each individual act from which she seeks relief. "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Morgan, 536 U.S. at 112. Because Plaintiff undisputedly failed to do so here, four of her six claims – with the exception of her claims for retaliatory harassment – are time-barred.

The Court further notes that even if Plaintiff had attempted to bring a claim for a hostile work environment, the factual

allegations raised by Plaintiff would still be insufficient to survive Defendant's motion. To bring such a claim, "an employee must allege harassment sufficiently severe or pervasive to alter the conditions of her employment." Comerinsky v. Augusta Coating and Mfg., LLC., 418 F. Supp. 3d 1252, 1259 (S.D. Ga. 2019) (internal quotation and citation omitted). Specifically, the employee must allege:

> (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee . . . (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Id. (quoting Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009)).

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Morgan, 536 U.S. at 115. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). Here,

Plaintiff's claims simply do not allege intimidation, ridicule, or insult sufficient to meet this standard.  Id.  The acts giving rise to Plaintiff's claims – denial of overtime opportunities, notice of a proposed removal, placement in a PIP, and denial of participation on an EEO meeting – fail, even taken together, to constitute an abusive work environment.  (Doc. 18, ¶ 28.)

Because Plaintiff failed to contact the EEOC within 45 days of her last alleged adverse employment action, her claims are **DISMISSED.**

## B. Remaining Claims

Only two claims remain: Plaintiff's retaliatory harassment claims, arising out of Defendant's allegedly denying Plaintiff the opportunity to participate on an Equal Employment Opportunity committee.[7]  (Doc. 18, ¶ 16; Doc. 20, at 4.)  Plaintiff alleges that although she "requested to participate in the April 2017 Annual Black History Special Emphasis Program held at their VA," she was denied participation in the same while "[t]he wrongdoers were aware of the protected activity at the time of the denial" and targeted Plaintiff.  (Doc. 18, ¶¶ 47, 56-57.)  Plaintiff claims

---

[7] While Plaintiff's amended complaint does not expressly connect specific factual allegations to each claim, she does not dispute that her factual allegations related to the EEO committee relate to her retaliatory harassment claim.  (Doc. 20, at 4.)  To the extent these factual allegations give rise to other claims, Plaintiff has waived those claims by abandoning them in her response to Defendant's motion to dismiss.  "It is the duty of the parties and not that of this Court to formulate arguments in opposition to reasonable motions."  Barnes v. AstraZeneca Pharms. LP, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017)

"this was not just a denial of a meeting," but denial of "participation . . . on a committee related to protected statuses." (Doc. 20, at 4.)

Under Title VII's opposition clause, "an employer may not retaliate against an employee because the employee has opposed [an unlawful employment practice]." EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000); 42 U.S.C. § 2000e-3(a). The opposition clause provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008) (citation omitted). The plaintiff "must 'carry the initial burden under the statute of establishing a prima facie case.'" Brush v. Sears Holdings Corp., 466 F. App'x 781, 785-86 (11th Cir. 2012) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Here, although Plaintiff alleged she engaged in an activity protected under Title VII, she failed to allege an adverse employment action. (Doc. 18, ¶ 11.)  To show an adverse employment action, "the plaintiff must show that the employer's actions were materially adverse to a reasonable employee, meaning that the employer's actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Palmer v. McDonald, 624 F. App'x 699, 702 (11th Cir. 2015) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).  The Eleventh Circuit has "decided that, as a matter of law, important conditions of employment include discharges, demotions, refusals to hire or promote, and reprimands." Akins v. Fulton Cnty., 420 F.3d 1293, 1300 (11th Cir. 2005) (citation omitted).  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." White, 548 U.S. at 68.  "And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id. (citation omitted).

Even taking all of Plaintiff's allegations as true, Plaintiff has still not alleged an adverse employment action.  (Doc. 18, ¶ 16.)  A reasonable person in Plaintiff's shoes would not view denial of participation on a committee as an adverse employment action, even if it made that employee unhappy. See, e.g., Rogers-

Libert v. Miami-Dade Cnty., 184 F. Supp. 2d 1273, 1286 (S. D. Fla. 2001) (holding that even claims of exclusion from meetings necessary to do her job, and allegedly affecting her job performance and professional reputation, were insufficient to constitute an adverse employment action). Accordingly, Plaintiff has failed to state claims for retaliatory harassment upon which relief can be granted.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 19) is **GRANTED** and this matter **SHALL BE DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _18th_ day of January, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA